HARVEY P. PLATT V. HARVEY SCRIBNER.

1. LIMITATION IN AN ACTION ON A CONTRACT THAT IS ONLY PARTLY IN WRITING.

An action upon a contract that is only partly in writing, there being unilateral terms or promises upon the one side that are not reduced to writing, is governed by sec. 4980, Rev. Stat., which limits the commencement of an action upon a contract in writing to fifteen years.

2. PAROL EVIDENCE IS ADMISSIBLE TO SHOW OTHER TERMS NOT INCONSISTENT WITH THOSE IN THE CONTRACT.

Where it is evident from the written instrument that only a part of the terms are expressed, parol evidence is admissible to show other terms not inconsistent with those expressed.

3. BURDEN OF PROOF IN SHOWING CONSIDERATION.

In an action upon a contract which upon its face expresses no consideration it is necessary for plaintiff to allege and prove a consideration, and on this issue the burden of proof is on the plaintiff from the beginning to the end of the inquiry.

ERROR to the Court of Common Pleas of Lucas county.

PARKER, J.

The plaintiff below, Harvey P. Platt, brought his action against the defendant in error, Harvey Scribner, upon a certain written instrument reading as follows:

"TOLEDO, OHIO, April 12, 1887.

"I have an understanding with Harvey Scribner to this effect: He has brought suit v. certain parties in U. S. Court to set aside foreclosure of mortgage v. T. & I. R. R. and to collect certain claims v. said R. R. and he is to have ½ of all collected. I am to have ⅕ of the amount Scribner is to receive i. e. he to have 80 per cent. and I 20 per cent. of the ½ he is to receive. The claim this day placed in Scribner's hands for collection owned by V. W. Granger $680.37. Scribner to settle with Granger and retain ½ of all received of which I am to have ½ or ¼ of the whole.                                                           "H. P. P.

"HARVEY SCRIBNER."

Since it did not appear upon the face of this instrument that there was any consideration for the promise of Harvey Scribner to share his compensation growing out of the collection of these claims with Mr. Platt, plaintiff avers in his petition certain facts showing the relations and surrounding circumstances of the parties, so as to place the court in position to construe and understand this instrument and apply it to the subject-matter, and also makes certain averments showing that there was, according to plaintiff's claim, a consideration for the promise. He says in that connection that "Prior to the twelfth of April, 1887, certain The Toledo & Indianapolis Railroad Company, a corporation theretofore organized under the laws of the state of Ohio and owning a railroad extending from the city of Toledo, county of Lucas, through the county of Wood, in said state, had become insolvent leaving a large amount of claims for labor and material unpaid. A number of the claimants against said company had consulted this plaintiff with reference to the collection of their claims and a number of other claimants had consulted the defendant with reference to the collection of their claims, and it was thought desirable by this plaintiff and the defendant that the claims should be united and prosecuted at one time, and this plaintiff agreed with the defendant that he would turn over to the defendant all the claims which he held or represented against said The Toledo and Indianapolis Railroad Company and would put the defendant in possession of all the facts and circumstances and information which he had with reference to said claims and that he would thereafter turn over to the defendant all claims which he might receive against said company and would render any assistance which might be desired by defendant in and about the prosecution of said claims." And that it was in consideration of these things done and to be done by the plaintiff that the defendant made this written promise, and plaintiff avers that he has performed in all respects as he promised and that the defendant had received such an amount by the settlement or collection of these claims as that the plaintiff became entitled to receive $1,248.00, and for that amount he asks judgment.

For his amended answer to this petition the defendant says, among other things, that he admits the signing of this instrument; admits the facts and circumstances surrounding the transaction substantially as alleged by the plaintiff; that he did make collections upon which the

plaintiff would be entitled to receive this amount, provided he had performed as he had promised. But he denies that he has performed; denies that there was any consideration for the promise on his part, and then states this, which he denominates his second defense: "This defendant for his second defense further says, that on April 12, 1887, at the time of the signing of the written paper, a copy of which is set out in plaintiff's petition, the said plaintiff represented to this defendant that he could and would settle the claims in this defendant's hands for collection, with A. W. Scott, Esq., the attorney representing the persons against whom this defendant was trying to collect said claims, and the said plaintiff then and there orally agreed that in case this defendant would sign the paper set forth in plaintiff's petition, said plaintiff would settle the said claims with the said Scott within a short time from said date, which promise on the part of the said Harvey P. Platt, was and is the only consideration for the signing of the written paper set forth in plaintiff's petition. This defendant further says that the said plaintiff did not settle said claims, and did not do or perform his said oral contract, but on the other hand, the said plaintiff, within a few days after the signing of said paper and making of said contract, disqualified himself from carrying on any negotiations for the settlement of said claims, by engaging in an angry controversy with the said Scott, and never thereafter attempted to settle said claims, but wholly neglected the same, and all that was done towards the prosecution and settlement of said claims, was done and performed by this defendant."

To that a reply was filed, I believe, containing a denial of these matters. The parties went to trial to a jury. Mr. Platt testified on his own behalf detailing the circumstances under which this instrument was signed and giving his version of his promises which he said constituted a consideration for the written promise of Mr. Scribner, in that connection detailing certain conversation between himself and Mr. Scribner with reference to this matter leading up to the signing of the instrument.

Mr. Scribner went upon the witness stand in his own behalf and undertook to give his version of these conversations as well as his version of the promises made or undertakings entered into orally by the plaintiff, constituting what he claimed was the consideration for defendant's written promise; and in the course of his examination as a witness he is enquired of and testifies as follows :

"Q. Coming down to the making of that contract and the negotiation between you and Mr. Platt tell what was said and done between you in regard to the making of that contract?"

That is objected to, and there was some discussion between counsel and the court. The witness is finally permitted to answer, as follows :

"A. In the first place, on the date that this contract was drawn, Mr. Platt told me he had got some claims against the T. & I. and knew a party that had got a number of them, and wanted to know, if he got them, what I would collect them for and how much I would give him, and I told him we might ask, say one-half of what I collected, and if he brought me some claims I would divide my half with him."

And the witness says that refers to the half of the claims that Mr. Platt proposed to bring to him, and referred to the Granger claims ; that that was agreed upon. Then he says "We commenced to discuss the question of making some kind of an arrangement by which he was to have a share of the whole thing."

"Q. State what was said? A. I said to Mr. Platt that so far as the American Finance Company and Col. Lemmert and those people were concerned, they were my friends, I had been fighting for them and they for me and he could not help me with them any because I was solid with them, but the man I was after was Burke; if he could influence Mr. Burke or could influence Mr. Burke's counsel and secure a settlement it would be some benefit to me, and he says: 'My relations with Scott are very close. We are good friends,' and, he says 'I think I can persuade Mr. Scott to settle these claims.' Well, I didn't realize then, and I said to Mr. Platt, 'If you will do that I will be very much obliged to you.' And he was running into our office quite a lot and he says 'if I should do that, I should have a share of what I make.' And I says 'How much do you think you should have?' He says 'I think I should have one-half.' I says 'I will tell you what I will do with you, if you will influence Mr. Scott and bring around a settlement of these claims I will give you twenty per cent. of what we realize on that settlement.' 'Well,' he says 'I will agree to do it,' and he says, 'I guess we had better put it in writing,' and he went out and back to his office, and I was sitting at my desk covered with all these papers, busy at work, and he brought in that piece of paper and showed it to me and I read it over and says 'I guess that is right.' As I handed it back I said 'I want it distinctly understood, Mr. Platt, this agreement is made.'"—

Thereupon an objection was made and there was more discussion, but further along he takes up the story as follows:

"I signed the paper, and as I held it in my hand I says 'Mr. Platt, I want it understood that unless you bring about a settlement of these claims, that you are not to have anything.' That was the substance of it, if he succeeded in settling the claims—unless he succeeded in settling the claims he was not to have anything. I handed him the paper, and if Mr. Platt had not answered that and said 'All right' I would not have given him the paper.

The last sentence of the answer was stricken out, and properly so. And again, on page 52:

"He said he would agree to that and went out of our office and into his office. I proceeded with my work for a little while and when he came in with that paper and asked me if it was all right (Referring to Exhibit 2) I said 'Yes,' and I took and signed it and said 'I want it understood that you are not to have anything unless you make the collection and settlement,' then I handed him the paper."

This was objected to by counsel for the plaintiff on the ground that it was an effort by oral evidence to vary or add to the conditions of a written contract. Exceptions were duly taken to the ruling of the court permitting this evidence to go to the jury; and the court, in the course of its charge, gave the jury certain instructions, on the subject which were also excepted to. I may say that reading these extracts from the courts'scharge does not give one a fair view of what the court did instruct the jury upon these various questions presented, but the whole charge is too long to read here, and I will confine myself to the reading of the parts that were excepted to:

"Upon this subject I instruct you as a matter of law governing you and controlling you as follows: If you find from the evidence that the delivery of the Granger claims had nothing whatever to do with the written promise, and formed no part of the consideration for the same whatever, but find from the evidence that the contract respecting the

Granger claim had been fully closed and comsummated and that the consideration for the execution of the written memorandum known as Exhibit No. 2 was as claimed by Scribner, that Platt could and would settle the claim with A. W. Scott, the attorney representing the persons from whom Scribner was trying to collect the claims, or would use his efforts in that direction, and you further find that said Harvey P. Platt orally agreed that in case that the said defendant would sign this paper marked Exhibit No. 2, he, the said plaintiff, would use his influence and his efforts in causing a settlement, and you further find that there was no consideration for the execution of Exhibit No. 2, and you further find from the evidence that said Harvey P. Platt did nothing whatever towards effecting a settlement or endeavoring to effect a settlement through A. W. Scott, or Burke, or anybody, and did not make any effort in that direction but refused or neglected to do anything, the plaintiff would not be entitled to recover the twenty per cent. of Scribner's fees upon the claims other than the Granger claim. In that event Platt would only recover the $46.40 and interest. * * * The substance of it is, that if you find from the evidence that the oral consideration as claimed by Scribner was the only consideration for this written promise on the part of Platt, and that the oral promise was that Platt was to use his influence for effecting a settlement through Scott and if he did nothing whatever in the performance of his oral promise it would be an absolute and entire failure of consideration, and equivalent in the eyes of the law to no consideration."

The court further charges the jury that if they find that there was any consideration whatever for the promise that the plaintiff is entitled to recover; that in order to defeat the claim there must be a total failure of consideration.

Now the first question presented in respect to this matter is whether the claim was barred by the statute of limitations. The action was not prosecuted until more than six years after the cause of action is alleged to have arisen. It is contended on behalf of defendant in error that the six year rule applies, and we are cited to a great deal of authority from other states to the effect that where a contract is only partly in writing, as this one evidently is there being material terms or promises upon the one side that are not reduced to writing, the six years limitation, or whatever the limitation may be governing unwritten contracts, governs. In our state it would be six years. But our statute is somewhat different from the statutes of the states, in which these holdings have been made, the statutes of those states providing limitations upon contracts in writing whereas our statute (Rev. Stat., Sec., 4980) reads:

"Within fifteen years: An action upon a specialty, or an agreement, contract, or promise in writing."

Now this is clearly a promise in writing, though the whole contract is made up of certain oral terms in addition to those written and we think that the fifteen years limitation applies, and that the claim is not barred. This view is supported by the following cases: Gibson v. Turnpike and Bridge Co., 18 O. S., 396; Warner v. Callender, 20 O. S., 190; (both of which were actions upon subscriptions to capital stock) and in Haines v. Tharp, 15 O. S., 130; (an action upon a promissory note) Waring & Co. v. Railroad Co., 7 Ohio Dec., reprints, 553, (in the Hamilton county district, an action upon a bill of lading).

Where it evidently appears from the written instrument that only a part of the terms are expressed, parol evidence is admissible to show

other terms not inconsistent with those expressed. In the case at bar what is to be done by either party is not expressed; that is, *all* that is to be done by either party is not expressed. What Mr. Scribner is to do is not definitely stated; but it is fairly implied perhaps by this writing that he is to perform some service in and about making these collections. The only thing that is provided for in this written agreement distinctly is the basis of the division of the fees or compensation. The written part of the contract expresses no consideration. Upon its face it is a *nudum pactum*. It became necessary for the plaintiff to allege and prove a consideration. The consideration alleged consisted of the turning over to Scribner of the Granger claims, and the agreement on the part of the plaintiff that he would perform certain services; that is that he would do something to aid Scribner in and about enforcing the collection or obtaining a settlement of all the claims, including the Granger claims. Plaintiff says that he has duly performed the contract on his part by turning over the Granger claims and by aiding as promised.

These allegations as to consideration and as to performance are denied by Scribner. And then he proceeds to aver that the consideration consisted of promises on the part of Platt to do something else, something different—that is, to bring about a settlement through the exercise of his influence upon certain persons in control of the adverse interests, and he says plaintiff has not performed, in whole or in part.

Now we do not regard this so-called second defense set up by Scribner as anything more in effect than a denial of the consideration alleged in the petition. It was not at all necessary to aver it as it is averred. All competent evidence on the subject could have been introduced under the denial. It is not matter in confession and avoidance so far as the question of consideration is concerned, it is in effect to say—and that is argumentive—that " since the promises to plaintiff forming the consideration for my promise is as I state it, it cannot be as he states it." We do not regard it as a distinct allegation of a condition precedent, at least not as that alone; but, even if it has that aspect or character, it nevertheless forms the consideration for the promise of Scribner, and since it becomes necessary for the plaintiff to prove a consideration, and in doing so he is obliged to produce oral evidence, *i. e.*, to testify himself of certain conversations between himself and Scribner which he says embodied the agreement on his part constituting such consideration, and Scribner is permitted by the law to give his versions of the same conversations, we cannot see how the court could do otherwise than hear and consider the whole matter and therefrom determine the true agreement, and whether it had been performed. Scribner then is not to be limited in his testimony or confined to a denial of the statements made by Platt as to these conversations. Though disproof of the consideration alleged by the plaintiff, or of performance of the promises as alleged by plaintiff would be sufficient, Scribner is not to be thus limited in his testimony. With the testimony properly admitted what disposition is to be made of it? It must be given due consideration in so far as it tends to disprove plaintiff's case.

The form of pleading adopted by Scribner, *i. e.* setting up the alleged second defense as if it were new matter necessary to be thus pleaded, has served we think to obscure the real question, to give it a false aspect and to confuse court and counsel.

In charging the jury the court instructs them that as to this matter

the burden of proof is upon the defendant; whereas, as we view the matter, the whole of the evidence bore upon the question whether the written promise of defendant was supported by a consideration, and if the consideration consisted of something to be done, something to be accomplished by the plaintiff to entitle him to recover, whether he had done or accomplished the thing substantially as promised; and we think that on this issue the burden of proof was on the plaintiff from the beginning to the end of the inquiry. See Leisy & Co. v. Zuellig, 6 Ohio Circ. Dec., 175.

The evidence received did not tend to alter the express terms of the promise, or to make it otherwise than a promise to pay twenty per cent. of Scribner's share of the amount collected on the claims when collected.

In the case of Holzworth & Sebastian v. Koch et al, 26 O. S., 33, cited by counsel for plaintiff, a defense was made to a promissory note by the sureties that the payees promised to furnish goods to the principal in certain amounts and at certain times and extend certain credit to the principal, and that this formed the sole consideration of the note, and that plaintiffs—payees—had not furnished the goods or credit agreed upon. The trial court instructed the jury *inter alia* that if plaintiffs, promise, as set up in the answer, was the sole consideration of the note, and plaintiffs had wholly failed to comply with or execute the promise then the sureties were entitled to a verdict. " Welsh, J." speaking for the court, says, " We see no error in these instructions of the court." etc. The instructions in the case at bar were, we think, in accordance with this decision. We see in the proof introduced by defendant here, and the effect given to it under the charge of the court, nothing resembling the conditions and modifications attempted to be engrafted upon the written contract in the case cited.

We have discussed this as if the alleged consideration of the turning over of the Granger claims had been eliminated from the problem. This must have been done by the jury, else, under the charge of the court, they could not have arrived at the verdict found.

That this might be done upon sufficient oral proof without violating any law of evidence, we have no doubt. This question too has to do with the consideration. The contract is plainly divisible in the sense that there are distinct promises with respect to distinct claims or classes of claims. The agreement is to divide the fee on the Granger claims on the basis of one-half to Scribner and one-half to Platt. The fee from the other claims is to be divided four-fifths to Scribner and one-fifth to Platt. It was competent to show that the agreement as to the Granger claims was complete before negotiations were entered upon as to the other claims, and that the turning over of the former formed no part of the consideration for the promise to divide fees received on the latter. Oral proof of this character did not tend to vary any of the terms of the writing. The jury was distinctly told, and properly, that if the turning over of the Granger claims formed any inducement to or consideration for the promise to divide fees or commission on the other claims, then even though promises made by Platt had not been performed, there was not a total failure of consideration and plaintiff had a right to recover. With these instructions before them the jury found for the plaintiff. We think the evidence justified this finding, and we find no error in the admission of evidence or the charge of the court, affirmed.

*Smith & Baker*, for plaintiff in error.

*C. W. Everett*, for defendant in error.